# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GEORGE MATTHEWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:16-cv-03038 |
| ) | JUDGE CRENSHAW |
| DR. [F/N/U] TERPTA *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff George Matthews is a state prisoner incarcerated at the Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee, although the events about which he complains took place while he was incarcerated at the Bledsoe County Correctional Complex ("BCCX"). Before the court is Plaintiff's application to proceed *in forma pauperis.* (Doc. No. 3.) In addition, Plaintiff has filed a complaint for civil rights violations under 42 U.S.C. § 1983 and for violation of various state laws against Defendants Dr. [F/N/U] Terpta, a physician; Dr. [F/N/U] Daniels, a dentist; Health Administrator John Doe and Nurse Jane Doe, which is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I.  Application to Proceed *In Forma Pauperis*

Under 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because Plaintiff properly submitted an *in forma pauperis* affidavit, and because it appears from his submissions that he lacks sufficient financial resources from which to pay the full filing fee in advance, the application (Doc. No. 3) will be granted.

Nevertheless, under § 1915(b), Plaintiff remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs' the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff will be assessed the full $350 filing fee, to be paid as directed in the order accompanying this memorandum opinion.

**I.     Standard of Review**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009). Both parts of this two-part test must be satisfied to support a claim under § 1983. See Christy v. Randlett, 932 F.2d 502, 504 (6th Cir. 1991).

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "*Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for the plaintiff. Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

## II. Factual Allegations

Plaintiff alleges that on August 26, 2015 at approximately 6:20 p.m., he was playing basketball and accidentally got hit in the face by another player's elbow. Later that same day, his face began to swell, so he applied ice. By the 12:30 am on the 27th, Plaintiff began bleeding profusely out of the left side of his nose. Plaintiff saw the nurse,[1] who gave him two Tylenol and sent him back to his housing unit.

The following morning, after reporting for work in the kitchen, Plaintiff went to see Dr. Terpta. Dr. Terpta took x-rays and told plaintiff there were no broken bones. He advised plaintiff to stay off the basketball court, gave him four Tylenol and sent him back to work. Plaintiff alleges that he was in severe pain and that his nose would frequently bleed profusely. For the next three days plaintiff went to sick call.

On August 30, 2015, Plaintiff saw a different doctor who took another set of x-rays and, after examining the x-rays, ordered that Plaintiff be taken to the hospital as soon as possible.

On September 1, 2015, Plaintiff was transported to Nashville General Hospital. When he arrived there no one knew anything about why Plaintiff had been transported to the hospital. The transportation officer called BCCX and, thereafter, Plaintiff was taken to oral surgery where he was treated by Dr. Daniels, who pulled two of his teeth from the left side of his mouth. After surgery, Plaintiff was transported to the special needs facility with no pain medication. The next morning he was transported back to BCCX. From September 1, 2015, the date of his surgery, to September 3, 2015, the Plaintiff was not given any pain medication.

After the tooth extraction surgery, Plaintiff continued to have pain and bleeding from his nose. Plaintiff submitted more sick call requests and sought pain medication. During this time Plaintiff could not chew any food.

---

[1] Presumably, Plaintiff means to identify the unnamed nurse whom he names as a defendant.

On September 9, 2015, Plaintiff was seen by a doctor who asked him why the doctor at Nashville General Hospital pulled Plaintiff's teeth, but did not fix his jaw. The doctor ordered that Plaintiff be taken to the hospital.

On September 14, 2015, Plaintiff was taken to the hospital. Plaintiff alleges that during "all this time" he continued to be in extreme pain. (Doc. No. 2 at Page ID# 10.)

On September 28, 2015, the Plaintiff returned to the hospital where he underwent another surgery. After the surgery, Plaintiff was told that his jaw had to be re-broken and plates put around his eye. His cheek bone had to be pulled away from his eye socket and numerous stitches were placed in Plaintiff's face.

Plaintiff alleges a claim for violation of his Eighth Amendment rights and various state law claims, including gross negligence, medical malpractice and intentional infliction of emotional distress.

As relief, Plaintiff seeks compensatory, special and punitive damages, and an injunction requiring the Defendants to arrange for Plaintiff to receive physical therapy and additional treatment.

**III. Discussion**

**A. Health Administrator John Doe**

Although named as a defendant, Plaintiff fails to set forth any allegations suggesting that the Health Administrator John Doe engaged in any conduct, let alone conduct that violated Plaintiff's Eighth Amendment rights or infringed on his rights under state law.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. See Twombly, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to

dismissal, even under the liberal construction afforded to *pro se* complaints.  See Gilmore v. Corr. Corp. of Am., 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); Frazier v. Michigan, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); Griffin v. Montgomery, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).  Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Health Administrator John Doe.

### B. Eight Amendment[2]

Plaintiff alleges that Dr. Daniels, Dr. Terpta and Nurse Jane Doe were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. Amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  Estelle v. Gamble, 429 U.S.

---

[2] The Court notes that the events about which Plaintiff complains took place more than a year before Plaintiff filed his complaint.  Nevertheless, Plaintiff's allegations suggest that the process of exhausting his administrative remedies delayed his filing (see e.g. Doc. 2 at Page ID# 20), and that officers at TTCC confiscated most of his legal materials, thus interfering with his ability to file his complaint.  (Id. at Page ID#5.)  In light of the foregoing, it is possible that the one-year statute of limitations applicable to §1983 actions was tolled for some period of time. See Brown v. Morgan, 209 F.3d 595 (6th Cir. 2000) (tolling the statute of limitations where a prisoner-plaintiff is exhausting available administrative remedies).  Because Plaintiff fails to state an Eighth Amendment claim, the Court need not, and does not, consider whether Plaintiff's action is time-barred.

102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. Id. at 104-05; Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Id. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," Blackmore, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." Napier v. Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000) (citing Farmer, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. Under Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. Estelle, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. Sanderfer v. Nichols, 62 F.3d 151, 154-55 (6th Cir. 1995). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. Gabehart v. Chapleau, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id.; see also Rouster v. Saginaw Cnty., 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" Mitchell v. Hininger, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011)).

1. Dr. Daniels

Plaintiff fails to allege facts sufficient to state a claim for deliberate indifference to a serious medical need against Dr. Daniels. Assuming for the sake of argument that Plaintiff could establish that Dr. Daniels is a state actor, see West, 487 U.S. at 48, Plaintiff alleges that on

8

September 1, 2015, he was sent to Nashville General Hospital, but when he arrived, no one at the hospital knew why he was there. After the transportation officer called BCCX, Plaintiff was taken to oral surgery where he saw Dr. Daniels. Dr. Daniels pulled two teeth from the left side of Plaintiff's mouth. A physician that Plaintiff saw about eight days later asked Plaintiff why the doctor at Nashville General Hospital had pulled Plaintiff's teeth but did not fix the Plaintiff's jaw.

Bearing in mind that Dr. Daniels is a dentist and that Plaintiff does not claim that he did not need to have two teeth pulled, nothing in the complaint suggests that Dr. Daniels had information that would have put him on notice that Plaintiff needed medical treatment, other than having his two teeth pulled, but deliberately disregarded Plaintiff's medical needs. See Farmer, 511 U.S. 825, 837 (explaining that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.") Plaintiff fails to allege any facts to demonstrate that Dr. Daniels possessed the level of awareness or intent required to establish deliberate indifference. Therefore, Plaintiff fails to state an Eight Amendment claim against Dr. Daniels.

    2. Nurse Jane Doe and Dr. Terpta

With respect to his claims against Nurse Jane Doe and Dr. Terpta, Plaintiff alleges that after he was elbowed in the face on the basketball court at approximately 6:20 p.m., he did not really think he was hurt. Later that evening, when his face began to swell, Plaintiff applied ice. Still later and moving into the early morning hours of August 27, 2015, Plaintiff alleges that he began to experience severe pain and his nose began to bleed profusely. At around 12:30 a.m., Plaintiff saw Nurse Jane Doe who gave him Tylenol and sent him back to his housing unit. Later that morning, Plaintiff reported to work, after which Plaintiff went to see Dr. Terpta. Dr. Terpta

took x-rays and told Plaintiff he did not have any broken bones. Dr. Terpta advised Plaintiff to stay off the basketball court, gave him four Tylenol and sent him back to work.

Plaintiff fails to allege facts sufficient to state a claim of deliberate indifference to a serious medical need against Nurse Jane Doe. Plaintiff does not set forth any facts to suggest that Nurse Jane Doe knew, or had reason to know, that his jaw was broken, but disregarded that knowledge when she treated him by giving him Tylenol. The facts alleged demonstrate that she provided him with some treatment, and there are no facts to suggest that she had reason to know additional treatment was required. Plaintiff fails to set forth any facts to suggest that Nurse Jane Doe had "a sufficiently culpable state of mind in denying [him] medical care." Blackmore, 390 F.3d at 898.

Likewise, Plaintiff fails to allege facts sufficient to state a claim of deliberate indifference to a serious medical need against Dr. Terpta. While it later turned out that Dr. Terpta was wrong, Plaintiff fails to set forth any facts to suggest that Dr. Terpta knew Plaintiff had broken bones, and deliberately ignored this information, or purposely told Plaintiff that he did not have any broken bones, when Dr. Terpta knew that he did. Viewing the facts alleged against Dr. Terpta in the light most favorable to Plaintiff, those facts support—at most—an inference of negligence bordering on medical malpractice. The facts do not, however, reflect the requisite intent to establish deliberate indifference, and, as previously noted, neither negligence nor medical malpractice will support a claim under § 1983.

Based on the foregoing, Plaintiff fails to state an Eight Amendment claim against Dr. Terpta or Nurse Jane Doe.

### C. State Law Claims

To the extent Plaintiff asserts violations of state law, this Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim

solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. See <u>Landefeld v. Marion Gen. Hosp.</u>, 994 F.2d 1178, 1182 (6th Cir. 1993); <u>Faughender v. City of N. Olmsted</u>, 927 F.2d 909, 917 (6th Cir. 1991). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's claim for violation of his Eighth Amendment rights is dismissed with prejudice because Plaintiff's allegations are insufficient to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). To the extent Plaintiff raises claims grounded in state law, those claims are dismissed without prejudice.

For the same reasons that the Court dismisses this action, the Court finds that an appeal of this action would not be taken in good faith. The Court therefore certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith, and Plaintiff will not be granted leave by this Court to proceed on appeal *in forma pauperis*.

An appropriate order will enter.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　WAVERLY D. CRENSHAW, JR.
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE